[Cite as *State v. Flinders*, 2012-Ohio-2882.]

| | | | |
|---|---|---|---|
| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

STATE OF OHIO

    Appellee

    v.

DENNY L. FLINDERS

    Appellant

C.A. No.     26024

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 10 03 0745

DECISION AND JOURNAL ENTRY

Dated: June 27, 2012

---

BELFANCE, Judge.

{¶1} Denny Flinders appeals from his convictions for aggravated vehicular homicide, failure to stop after an accident, and operating a vehicle while intoxicated. For the reasons set forth below, we affirm.

I.

{¶2} Ashawnte Thompson invited people over to her apartment for a party, and Stephanie Flinders was one of the first to arrive. Ms. Flinders soon left, to pick up her brothers Mr. Flinders and Joseph Collins and bring them to the gathering. Ms. Thompson's neighbor Andjelko Dupodj and his girlfriend also came over. Eventually, Ms. Thompson's cousin, Mr. Hale, arrived with a friend.

{¶3} A fight broke out between Mr. Hale, Mr. Flinders, Mr. Collins, and Mr. Hale's friend. Barberton police officers were called, but they arrived after the fight had stopped. After speaking with the people at the apartment, the officers told Mr. Hale to leave, and Mr. Hale

complied. Ms. Flinders then received a phone call from Mr. Flinders' girlfriend Kaylee McVicker and left to pick her up. While driving to pick up Ms. McVicker, she saw Mr. Hale and offered to give him a ride. Ms. Flinders then picked up Ms. McVicker and drove her and Mr. Hale back to Ms. Thompson's apartment.

{¶4} That night, Mr. Hale died from injuries he sustained when he fell off the hood of the car Mr. Flinders was driving, though how Mr. Hale came to be on the hood of the car is disputed. After the incident, Mr. Flinders left the scene, but a car followed him. Someone in that car called the police and told them where to find Mr. Flinders. Eventually, the Barberton police pulled Mr. Flinders over, and Mr. Flinders submitted to a breathalyzer test, which indicated that his blood alcohol level was .169, more than twice the legal limit.

{¶5} A jury found Mr. Flinders guilty of aggravated vehicular homicide, failure to stop after an accident, and two counts of operating a vehicle while intoxicated but found him not guilty of aggravated vehicular assault. The trial court merged the two counts of operating a vehicle while intoxicated with the aggravated vehicular homicide for the purposes of sentencing and sentenced Mr. Flinders to an aggregate term of eight years in prison. Mr. Flinders has appealed, raising three assignments of error for review. For ease of discussion, we have rearranged his assignments of error.

II.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN FAILING TO GRANT MR. FLINDER[S'] CRIMINAL RULE 29 MOTION TO DISMISS THE CHARGES FOLLOWING THE STATE'S CASE AND AT THE CONCLUSION OF THE EVIDENCE.

{¶6} In his second assignment of error, Mr. Flinders challenges the sufficiency of the evidence as to his convictions for aggravated vehicular homicide and failure to stop after an accident.

{¶7} "We review a denial of a defendant's Crim.R. 29 motion for acquittal by assessing the sufficiency of the State's evidence." *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, ¶ 33. *See also State v. Morris*, 9th Dist. No. 25519, 2011–Ohio–6594, ¶ 12. In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in the light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id*. at paragraph two of the syllabus.

{¶8} Mr. Flinders was convicted of violating R.C. 2903.06(A)(1)(a), which provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [a]s the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance[.]" R.C. 4511.19(A) prohibits the operation of a motor vehicle while intoxicated. Mr. Flinders was also convicted of violating R.C. 4549.02(A), which provides that:

> In case of accident to or collision with persons or property upon any of the public roads or highways, due to the driving or operation thereon of any motor vehicle, the person driving or operating the motor vehicle, having knowledge of the accident or collision, immediately shall stop the driver's or operator's motor vehicle at the scene of the accident or collision and shall remain at the scene of the accident or collision until the driver or operator has given the driver's or

operator's name and address * * * together with the registered number of that motor vehicle, to any person injured in the accident or collision or to the operator, occupant, owner, or attendant of any motor vehicle damaged in the accident or collision, or to any police officer at the scene of the accident or collision.

{¶9} Ms. Thompson testified that, when Ms. Flinders returned to her apartment with Ms. McVicker and Mr. Hale, she and Ms. Gater went out to speak with them. Mr. Collins joined them and also spoke with Mr. Hale. According to Ms. Thompson, everything seemed to be fine until Mr. Flinders came out of the apartment and started yelling at Mr. Hale. Mr. Collins then attacked Mr. Hale and, while they were fighting, Mr. Flinders ran up behind Mr. Hale and hit him.

{¶10} Ms. Thompson testified further that the fight eventually stopped but Mr. Flinders got into his sister's car and put it in reverse, hitting his sister in the process. According to Ms. Thompson, Mr. Flinders then pulled forward, reversed the car again, and then drove forward again. She testified that, when Mr. Flinders pulled forward a second time, he "clipped" Mr. Hale, causing Mr. Hale to fall onto the hood of the car. Mr. Flinders continued down the street and braked, which caused Mr. Hale to fall off the car. Ms. Thompson testified that Mr. Flinders then ran over Mr. Hale and drove away.

{¶11} Courtney Gater, one of the other guests, generally corroborated Ms. Thompson's account of the accident. She testified that she saw Mr. Flinders get into his sister's car, pull forward, reverse and hit his sister, and then drive forward. According to Ms. Gater, Mr. Hale "kind of * * * got on the car to avoid being hit." Mr. Flinders then braked, and Mr. Hale fell off the car. Ms. Gater testified that she saw Mr. Flinders run over Mr. Hale and then keep driving.

{¶12} Ms. Flinders testified that, when she came back with Mr. Hale, Mr. Collins came out of the house and sat in her car talking to Mr. Hale. Ms. McVicker was in the car as well. Mr. Flinders came up to the driver's window a little later and asked what Ms. Flinders was doing

with Mr. Hale. According to Ms. Flinders, Mr. Hale started yelling at Mr. Flinders, and Mr. Flinders yelled back. While the two men argued, Mr. Collins and Ms. McVicker got out of the car and moved towards the back. Mr. Hale got out of the car and then he and Mr. Collins began to fight.

{¶13} Ms. Flinders testified that she never saw Mr. Flinders join in the fight with Mr. Hale and Mr. Collins. However, she testified that she tried to hold Mr. Hale back from the fight, but Mr. Hale told her "'Let me go. I'm going to shoot you.'" Ms. Flinders let Mr. Hale go, but then tried to get between him and Mr. Collins and was knocked to the ground. According to Ms. Flinders, Mr. Flinders got in her car and backed into her, knocking her to the ground again. She did not see anything else until after Mr. Hale had fallen from the hood of the car.

{¶14} Officer David Dawson of the Barberton Police Department testified that he pulled Mr. Flinders over. When Officer Dawson approached the car, he smelled a strong odor of alcohol. Officer Dawson testified that he did not have Mr. Flinders perform field sobriety tests because he had been informed by the dispatcher that Mr. Flinders had been involved in a hit-and-run. However, Officer Dawson did administer a breathalyzer test, to which Mr. Flinders consented. The results of the breathalyzer test indicated that Mr. Flinders' blood alcohol content was .169, more than twice the legal limit.

{¶15} Dr. George Sterbenz, the chief deputy medical examiner at the Summit County Medical Examiner's Office, performed Mr. Hale's autopsy. He testified that, based on his findings during the autopsy, he believed Mr. Hale had been struck by a vehicle moving between 25 to 35 mph. He testified that Mr. Hale's head injury was likely caused by striking his head on the road after being thrown from the car.

{¶16} Mr. Flinders concedes that he violated R.C. 4511.19 and that Mr. Hale died when he fell off the hood of Mr. Flinders' car when Mr. Flinders braked. Instead, he argues that there was no evidence to prove that Mr. Flinders' actions were the cause of Mr. Hale's death because Mr. Hale had jumped on the hood of his car and blocked his view, leaving him with the choice either "to continue driving without being able to see * * * or slow the vehicle to a stop so that Mr. Hale could get off of the vehicle." However, Ms. Thompson testified that Mr. Flinders hit Mr. Hale with the car, causing Mr. Hale to fall onto the hood. Mr. Flinders then braked, throwing Mr. Hale to the pavement where, according to Dr. Sterbenz, Mr. Hale suffered the head injury that killed him. Viewing the evidence in the light most favorable to the State, there was sufficient evidence for the jury to find that Mr. Flinders committed the offense of aggravated vehicular homicide.

{¶17} Regarding his conviction for leaving the scene of an accident, Mr. Flinders argues that the State failed to "indisputably show that a collision with person or property had occurred." However, there was testimony that Mr. Flinders struck Mr. Hale with his car and that he had not stopped. Mr. Flinders also argues that there was insufficient evidence to conclude that he knew a collision had occurred, but there was testimony that, following Mr. Flinders striking Mr. Hale with his car, Mr. Hale lay on the windshield of the car Mr. Flinders was driving. This testimony was also corroborated by footage from a security camera. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support a finding that Mr. Flinders hit Mr. Hale with the vehicle and knew that he had done so.

{¶18} Mr. Flinders' second assignment of error is overruled.

ASSIGNMENT OF ERROR I

MR. FLINDERS' CONVICTIONS FOR AGGRAVATED VEHICULAR HOMICIDE AND LEAVING THE SCENE OF AN ACCIDENT WERE CONTRARY TO THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶19} In his first assignment of error, Mr. Flinders argues that his convictions for aggravated vehicular homicide and failing to stop after an accident are against the manifest weight of the evidence because there was conflicting testimony as to how Mr. Hale came to be on the hood of the car.

{¶20} In reviewing a challenge to the weight of the evidence, the appellate court:

[m]ust review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶21} Mr. Flinders argues that his conviction for aggravated vehicular homicide is against the manifest weight of the evidence because Mr. Hale's conduct was the cause of his death. In support, he points to his own testimony, the testimony of Ms. Gater, and the testimony of Mr. Dupodj that Mr. Hale had jumped onto the hood of the car. This is in contrast to testimony that described Mr. Hale as falling onto the hood after Mr. Flinders hit him. However, Ms. Gater testified that Mr. Hale "kind of * * * got on the car to avoid being hit[,]" and Mr. Dupodj testified that, after Mr. Hale was on the hood of the car, Mr. Flinders swerved the car like he was trying to throw Mr. Hale off.

{¶22} As for Mr. Flinders' testimony, he did testify that Mr. Hale chased him into the car, threatening to shoot him, and that, when he attempted to drive away, Mr. Hale jumped onto

the hood of the car and began to punch the windshield. However, the jury was not required to believe Mr. Flinders' testimony.

{¶23} Mr. Flinders also argues that Ms. Thompson's testimony about the accident lacks credibility because it was not corroborated by Ms. Flinders or Ms. McVicker. Notably, both women are related to Mr. Flinders, which could have led the jury to believe their testimony was biased, but, more importantly, both women testified that they did not actually see the accident. While Ms. Flinders and Ms. McVicker did not corroborate Ms. Thompson or Ms. Gater, they did not contradict the critical points of their testimony.

{¶24} Regarding his conviction for failing to stop after an accident, Mr. Flinders argues that the jury lost its way because he, Mr. Dupodj, and Ms. Gater all testified that Mr. Hale jumped on the car and because Dr. Sterbenz admitted that he could not rule out that Mr. Hale was running alongside the car and jumped onto the hood. It is unclear precisely what Mr. Flinders' argument is. He appears to argue that a person's body colliding with a car is not a collision if the driver was not at fault. However, he cites no authority in support of this position, *see* App.R. 16(A)(7), and, furthermore, we have not found any definition in the Revised Code that would allow such an interpretation.

{¶25} Ms. Thompson, Ms. Gater, Mr. Dupodj, and Mr. Flinders all testified that Mr. Hale collided with Mr. Flinders car, though their testimony differs as to how the collision occurred. Regardless, R.C. 4549.02(A) does not only require a driver or operator of a motor vehicle to stop if he is at fault for the collision; instead, a driver must stop if he knows a collision has occurred. Mr. Flinders argues that he could not stop because he was afraid for his life. However, this is not a manifest weight argument but rather an excuse or justification.

{¶26} After a thorough review of the record, we cannot say that the jury's resolution of the credibility of the witnesses was unreasonable or that the jury lost its way and created a manifest miscarriage of justice when it found that Mr. Flinders violated R.C. 2903.06(A)(1)(a) and 4549.02(A). Accordingly, his convictions for aggravated vehicular homicide and failing to stop after an accident are not against the manifest weight of the evidence.

{¶27} Mr. Flinders' first assignment of error is overruled.

## ASSIGNMENT OF ERROR III

THE TRIAL COURT ABUSED ITS DISCRETION [] IN FAILING TO ALLOW
MR. FLINDERS TO PRESENT THE DEFENSE[] OF DURESS.

{¶28} Mr. Flinders argues that the trial court abused its discretion when it refused to instruct the jury on duress because he had established every element of the defense at trial. At trial, Mr. Flinders' counsel confined her arguments to whether the jury should be instructed on duress as a defense to aggravated vehicular homicide. Because Mr. Flinders does not suggest that the trial court should have instructed the jury on duress for the failure to stop after an accident or operating a vehicle while intoxicated charges, we confine our analysis to aggravated vehicular homicide.

{¶29} Duress has long been recognized as an affirmative defense in Ohio. *See, e.g., State v. Sappienza*, 84 Ohio St. 63 (1911). However, "the defense of necessity or duress is strictly and extremely limited in application and will probably be effective in very rare occasions." *State v. Cross*, 58 Ohio St.2d 482, 488 (1979). A trial court's decision whether to give an instruction on duress is reviewed for an abuse of discretion. *See State v. Getsy*, 84 Ohio St.3d 180, 198 (1998).

> In order for the defendant to successfully raise an affirmative defense, evidence of a nature and quality sufficient to raise the issue must be introduced. Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of

duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.

(Internal quotations and citations omitted.) *Id.* at 198-199.

{¶30} "The terms 'necessity' and 'duress' are distinct, yet are often used interchangeably and are often indistinguishable." *Cross*, 58 Ohio St.2d at 483, fn. 2. However, "[r]unning throughout their meanings is the theme that imminent, immediate danger or threat of danger prevents the actor from exercising his own will, and that there is no alternate path to take. Therefore, the actor is forced to choose between the lesser of two evils." *Id.* In order to establish the defense of duress, one must establish the following: (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm. *See State v. Lawson*, 2d Dist. No. 22155, 2008-Ohio-1311, ¶ 20-21 (setting forth the elements of necessity and noting that the main difference between duress and necessity is that "duress involves a human threat whereas necessity involves a threat from natural or physical forces[]").

{¶31} After allowing counsel to argue for an instruction of duress, the trial court denied Mr. Flinders' request for the jury instruction of duress. It is clear from the transcript that the trial court carefully considered the facts of this case. Mr. Flinders said that he got in the car because Mr. Hale threatened to shoot him. Though the trial court did not expressly refer to the security camera footage, that footage showed Mr. Flinders getting into the car, reversing, and then driving forward. The footage shows that, after driving a short distance away from where Mr. Hale was

fighting, Mr. Flinders stopped the car and got out again. In other words, Mr. Flinders did not take the initial opportunity to escape. However, instead of leaving, Mr. Flinders stood next to the car and remained near Mr. Hale, whom Mr. Flinders claims was threatening him.

{¶32} Accordingly, given the facts of this case, we cannot say the trial court abused its discretion when it declined to instruct the jury on the defense of duress. Mr. Flinders' third assignment of error is overruled.

III.

{¶33} Mr. Flinders' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

LEE A. SCHAFFER, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.