[Cite as *State v. Floyd*, 2012-Ohio-3551.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

v.

ERIC J. FLOYD

    Appellant

C.A. No.     25880

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 10 10 2904

DECISION AND JOURNAL ENTRY

Dated: August 8, 2012

MOORE, Judge.

{¶1} Defendant-Appellant, Eric Floyd, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2} Shortly after 9:00 p.m. on October 18, 2010, Lindsey Comeione and her friend Ashley Dill stopped for gas at the Circle K on South Maple Street in Akron. Comeione was driving her friend's pick-up truck and Dill was her passenger. When the two stopped at the gas station, Dill exited the truck and prepared to operate the fuel pump. A frantic man then approached the truck and asked for a ride, claiming that someone was trying to shoot him. Dill refused to help the man. The man, later identified as Floyd, then opened the truck's passenger door and climbed inside. Comeione fell from the driver's side of the truck onto the pavement before Floyd started the truck and drove away. Dill used her cell phone to call the police and reported the truck stolen.

{¶3}    While patrolling the area near Akron City Hospital, Officer Jason McKeel and his partner received a notice from dispatch to be on the lookout for the truck.  The two were stopped at a red light on East Market Street when a truck approached from behind.  The truck slowed and pulled around the cruiser before taking off down Market Street.  Officer McKeel and his partner activated the cruiser's lights and sirens and followed the truck.  Floyd drove the truck to the Akron Police Station with Officer McKeel and his partner behind him.  When Floyd reached the station he jumped out of the truck, put his hands in the air, and lay down on his stomach.  Floyd later indicated that he took the truck from Comeione and Dill for the purpose of driving to the police station because someone was trying to kill him.

{¶4}    A grand jury indicted Floyd on counts of aggravated robbery, robbery, two counts of felonious assault, vehicular assault, grand theft, driving under suspension, and two minor traffic violations.  Before trial, the State dismissed the minor traffic violations as well as the charges of vehicular assault and driving under suspension.  A jury then found Floyd guilty of grand theft and robbery, but not guilty of the remaining counts.  The trial court merged the two offenses for purposes of sentencing as allied offenses of similar import and sentenced Floyd to four years in prison on the robbery count.

{¶5}    Floyd now appeals from his convictions and raises three assignments of error for our review.

II.

**ASSIGNMENT OF ERROR I**

THE TRIAL COURT COMMITTED PLAIN ERROR IN ITS JURY INSTRUCTIONS WHEN IT A) INSTRUCTED THE JURY ON THE AFFIRMATIVE DEFENSE OF DURESS; AND B) FAILED TO GIVE A JURY INSTRUCTION ON THE AFFIRMATIVE DEFENSE OF NECESSITY.

**{¶6}** In his first assignment of error, Floyd argues that the trial court committed plain error by instructing the jury on the affirmative defense of duress rather than necessity. We do not agree that the trial court committed plain error.

**{¶7}** Floyd acknowledges that he did not object to the trial court's jury instructions. Instead, he argues that the court committed plain error by instructing the jury on the wrong affirmative defense.

> Under Crim.R. 52(B), [p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. By its very terms, the rule places three limitations on a reviewing court's decision to correct an error despite the absence of a timely objection at trial. First, there must be an error, i.e., a deviation from a legal rule. Second, the error must be plain. To be plain within the meaning of Crim.R. 52(B), an error must be an obvious defect in the trial proceedings. Third, the error must have affected substantial rights. We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

(Internal citations and quotations omitted.) *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "A trial court's jury instructions must be correct and complete statements of the law." *State v. Wilson*, 9th Dist. No. 25100, 2011-Ohio-4072, ¶ 24. A trial court does not err by refusing to issue an instruction to which a defendant, as a matter of law, is not entitled. *State v. Terrion*, 9th Dist. No. 25368, 2011-Ohio-3800, ¶ 17.

**{¶8}** Both duress and necessity are affirmative defenses in Ohio. *State v. Cross*, 58 Ohio St.2d 482, 485 (1979).

> In order for the defendant to successfully raise an affirmative defense, evidence of a nature and quality sufficient to raise the issue must be introduced. Evidence is sufficient where a reasonable doubt of guilt has arisen based upon a claim of duress. If the evidence generates only a mere speculation or possible doubt, such evidence is insufficient to raise the affirmative defense, and submission of the issue to the jury will be unwarranted.

(Internal quotations and citations omitted.) *State v. Flinders*, 9th Dist. No. 26024, 2012-Ohio-2882, ¶ 29, quoting *State v. Getsy*, 84 Ohio St.3d 180, 198-199 (1998).

In order to establish the defense of duress, one must establish the following: (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm.

*Flinders* at ¶ 30; *State v. Lawson*, 2d Dist. No. 22155, 2008-Ohio-1311, ¶ 20. Duress and necessity are "often used interchangeably and are often indistinguishable." *Cross* at 483, fn. 2. "[T]he main difference between duress and necessity is that 'duress involves a human threat whereas necessity involves a threat from natural or physical forces[.]" *Flinders* at ¶ 30, quoting *Lawson* at ¶ 20-21. In any event, "the defense of necessity or duress is strictly and extremely limited in application and will probably be effective in very rare occasions." *Cross* at 488. A court may refuse to issue a necessity or duress instruction if the evidence is insufficient as a matter of law to warrant such an instruction. *Id.*

{¶9} Floyd's defense at trial was that he only took the truck from Comeione and Dill because he was afraid for his life and believed someone was trying to kill him. Floyd testified that, while he was serving a prison sentence on an unrelated offense, he learned that his cousin had been murdered. When Floyd was released from prison, he began to inquire around his neighborhood about his cousin's murder in an attempt to identify the perpetrator. Floyd soon came to believe a specific Akron gang had perpetrated the murder. On the night in question, Floyd was riding in a friend's car when a black SUV pulled next to the car. Someone in the SUV then called Floyd's name and displayed a handgun. Floyd testified that he believed members of the gang who murdered his cousin had found him and meant to kill him.

{¶10} According to Floyd, he told the driver of the car he was riding in to quickly drive away. The driver did so, but then became scared. As such, Floyd testified that he volunteered to

get out of the car and "take [his] chances by going down to the police station." Before Floyd travelled much further, he saw another friend he recognized, jumped into the back of his friend's truck, and told him to drive away because someone was trying to shoot him. That friend too, however, did not want to take Floyd directly to the police station because he had outstanding warrants. Floyd exited the truck near the Circle K on South Maple Street and took the truck from Comeione and Dill. Floyd testified that he took the truck because, when he was asking Dill for a ride, he thought he saw the same SUV he had previously encountered driving toward the gas station.

{¶11} When Floyd left the gas station in the truck, he did not drive directly to the police department. He testified that he did not want to go directly to the police station if the SUV was right behind him. Instead, Floyd claimed that he decided to drive nearer to the University of Akron because he knew eventually he would see a police car patrolling the area. When Floyd saw Officer McKeel's police car, he testified that he slowed down, lowered the truck's window, and requested that Officer McKeel and his partner follow him to the police station because someone was trying to kill him. Floyd then drove to the police station with the police cruiser behind him.

{¶12} Floyd admitted that he had his cell phone with him throughout this incident and never used it to call for help. Further, even accepting Floyd's version of the events, he admitted that he voluntarily exited two vehicles to proceed on foot, despite his assertions that he was in imminent fear of being killed. Once he reached the gas station, he never sought to enter the building or use the phone at the gas station to call the police for help. He also admitted that he did not drive directly to the police station when he took the truck from Comeione and Dill. In fact, Floyd drove the truck from South Maple Street to an area of Akron well past the police

station.  Officer McKeel and his partner finally encountered Floyd at the corner of East Market Street and Spruce Street.

{¶13}  Floyd argues that it was plain error for the court to instruct the jury on duress rather than necessity because duress requires forced participation in an offense against the will of the person while necessity does not.  Either affirmative defense, however, requires a defendant to prove that he was forced to engage in conduct because "there [was] no alternate path to take." *Cross*, 58 Ohio St.2d at 483, fn. 2; *Flinders* at ¶ 30.  The record does not support the conclusion that Floyd had no alternate path to take when he took the truck from Comeione and Dill.  Floyd had access to his cell phone throughout the encounter.  He also voluntarily left two vehicles to proceed on foot.  Had Floyd feared for his life, he could have used his cell phone to call the police, asked the drivers of the vehicles to help him further, or sought help from the employees at the Circle K when he arrived there.  Under the circumstances presented herein, Floyd had several alternative paths available to him.  There was insufficient evidence to warrant the affirmative defense of duress or necessity.  *See Flinders*, 2012-Ohio-2882, at ¶ 29, quoting *Getsy*, 84 Ohio St.3d at 198-199.

{¶14}  Because Floyd was, as a matter of law, not entitled to an instruction on duress or necessity, the trial court did not commit plain error by refusing to instruct the jury on necessity. *See Cross* at 488; *Terrion*, 2011-Ohio-3800, at ¶ 17.  To the extent Floyd argues that the court erred by instructing the jury on duress, the court only did so because his counsel had requested it. *See State v. Travis*, 9th Dist. No. 22737, 2006-Ohio-1048, ¶ 9, quoting *State ex rel. Bitter v. Missig*, 72 Ohio St.3d 249, 254 (1995) ("Under the invited-error doctrine, a party will not be permitted to take advantage of an error which he himself invited or induced the trial court to make.").  In any event, we fail to see how Floyd was prejudiced by the court's duress instruction.

Floyd claims that the court's duress instruction misled the jury because, unlike necessity, duress would have required him to prove that another person forced his participation in an offense against his will. Whether by human threat or threat from natural or physical forces, however, both duress and necessity would have necessitated proof of circumstances beyond the defendant's control forcing his or her participation in an offense. *Flinders*, 2012-Ohio-2882, at ¶ 30; *Lawson*, 2008-Ohio-1311, at ¶ 20. Because Floyd had alternative courses of action available to him, he was not entitled to either instruction as a matter of law and has not shown that the trial court committed plain error. Floyd's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

APPELLANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL.

{¶15} In his second assignment of error, Floyd argues that he received ineffective assistance of counsel. We disagree.

{¶16} To prove an ineffective assistance claim, Floyd must show two things: (1) that counsel's performance was deficient to the extent that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and (2) that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To demonstrate prejudice, Floyd must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland* at 691. Furthermore, this Court need not address both *Strickland* prongs if an appellant fails to prove either one. *State v. Ray*, 9th Dist. No. 22459, 2005-Ohio-4941, ¶ 10.

{¶17} Floyd argues that he received ineffective assistance of counsel because his counsel's pursuit of the affirmative defense of duress instead of necessity essentially left him without a viable defense. As previously discussed, Floyd was not entitled to either defense as a matter of law. Because Floyd was not entitled to either defense, he has not shown that his trial counsel was ineffective with regard to the instructions. *See State v. Mahoney*, 9th Dist. No. 92CA005338, 1993 WL 12143, *1 (Jan. 20, 1993) (counsel not ineffective for failing to request necessity or duress instruction where defendant was not entitled to either as a matter of law). Floyd's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

> APPELLANT'S CONVICTIONS WERE BASED UPON INSUFFICIENT EVIDENCE AS A MATTER OF LAW, AND WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶18} In his third assignment of error, Floyd argues that his convictions are based on insufficient evidence and are against the manifest weight of the evidence. We do not agree with either proposition.

{¶19} In order to determine whether the evidence before the trial court was sufficient to sustain a conviction, this Court must review the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus; *see also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386.

{¶20} "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall * * * [i]nflict, attempt to inflict, or threaten to inflict physical harm on another * * *." R.C. 2911.02(A)(2). The phrase "theft offense" refers to any violation of the enumerated statutes set forth in R.C. 2913.01(K). R.C. 2911.02(C)(2). Whoever commits the foregoing offense is guilty of robbery. R.C. 2911.02(B).

{¶21} For his grand theft count, Floyd was charged with a violation of R.C. 2913.02(A)(1). That statute provides: "No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [w]ithout the consent of the owner or person authorized to give consent * * *." R.C. 2913.02(A)(1). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

{¶22} Floyd argues that his convictions are based on insufficient evidence because he did not intend to commit a theft offense or to deprive the owner of the truck of her property. He argues that he only took the truck Comeione was driving for the purpose of fleeing from harm, so he lacked the requisite mens rea for the offenses.

{¶23} Comeione and Dill both testified that they did not give Floyd permission to use their friend's truck, as did Ashley Myers, the truck's owner. Dill testified that she did not see anyone chasing Floyd during her encounter with him. She only observed that Floyd was frantic and asking for a ride. Comeione testified that Floyd began beating on the truck and saying that someone was trying to kill him while she was still inside. Floyd then entered the truck and "violently push[ed]" Comeione out of the truck at the same time that she was trying to exit it.

Both women screamed at Floyd to stop, but he quickly drove the truck away from the gas station, striking both women with the truck as he drove it.

{¶24} Officer McKeel testified that he and his partner first observed the truck as they were stopped at a red light on East Market Street. The truck slowed, but then drove around the cruiser and sped off. Officer McKeel and his partner gave chase. He testified that the truck reached speeds of 50 mph on East Market Street and ran through three red lights. Officer McKeel and his partner activated the cruiser's lights and sirens almost immediately, before the cruiser even crossed over Route 8, but the truck never stopped. Floyd only stopped the truck when he reached the police station, jumped out of it, and lay down on the ground with his hands in plain view.

{¶25} Viewing the evidence in a light most favorable to the State, a rational trier of fact could have concluded that the State set forth sufficient evidence of robbery and grand theft. Floyd took the truck from Comeione and Dill by force at the Circle K without their consent or the consent of the owner. Moreover, he only drove to the police station after Officer McKeel and his partner gave chase and activated their cruiser's lights and sirens. Based on the evidence presented, the jury could have determined that Floyd forcibly took the truck without consent and intended to permanently deprive the truck's owner of her property before the police identified the truck, gave chase, and forced his surrender. As such, Floyd's convictions are not based on insufficient evidence.

{¶26} In determining whether a conviction is against the manifest weight of the evidence an appellate court:

> must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest

miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986). A weight of the evidence challenge indicates that a greater amount of credible evidence supports one side of the issue than supports the other. *Thompkins*, 78 Ohio St.3d at 387. Further, when reversing a conviction on the basis that the conviction was against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and disagrees with the factfinder's resolution of the conflicting testimony. *Id.* Therefore, this Court's "discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). *See also Otten* at 340.

{¶27} Floyd essentially restates his sufficiency argument in claiming that his convictions are against the manifest weight of the evidence. He argues that the jury lost its way by not believing his testimony that he took the truck for the sole purpose of fleeing from harm. Yet, "[a] verdict is not against the manifest weight of the evidence because the jury chose to believe the State's witnesses rather than the defense witnesses." *State v. Andrews*, 9th Dist. No. 25114, 2010-Ohio-6126, ¶ 28. Floyd testified that he did not drive the truck directly to the police station because he thought he was being followed and he wanted to go in search of a police cruiser to help him. He testified that when he saw Officer McKeel's cruiser, he slowed the truck, pulled alongside the cruiser, lowered the truck's window, and asked the officers to escort him to the police station because someone was trying to kill him. Officer McKeel testified, however, that Floyd did not lower the truck's window or speak with the officers in any manner. Instead, Floyd drove around the cruiser and accelerated down East Market Street, reaching speeds of 50 mph and ignoring several traffic lights. Based on the evidence presented, the jury reasonably could have chosen to believe that Floyd intended to steal the truck, but changed tactics and drove to the

police station when he realized the police had identified him. This is not the exceptional case where the jury lost its way by choosing to believe the State's version of the events. *Martin* at 175; *Otten* at 340. Floyd's third assignment of error is overruled.

### III.

**{¶28}** Floyd's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
CONCURS.

BELFANCE, J.
CONCURRING IN JUDGMENT ONLY.

{¶29} I concur in the judgment because I do not believe that the trial court committed plain error. Mr. Floyd argues that, notwithstanding his counsel's request for the very instruction the trial court gave, the trial court should have instructed the jury on necessity. However, necessity requires "a harm due to the pressure of a physical or natural force, rather than human force[.]" *State v. Lawson*, 2d. No. 22155, 2008-Ohio-1311, ¶ 20. Any force that occurred in this case was human force, i.e., the alleged gunman in the SUV that was chasing Mr. Floyd. Therefore, duress was the appropriate instruction. *See State v. Flinders*, 9th Dist. No. 26024, 2012-Ohio-2882, ¶ 30. *See also Lawson* at ¶ 20-21.

{¶30} Furthermore, the court instructed the jury that, "[w]hen a person is forced to participate in an offense against his will because he honestly believes and has good reason to believe that he is in immediate danger of death or great bodily harm and there was no reasonable opportunity to escape, he is entitled to be acquitted on the grounds of duress." By not limiting the outside force to human force, the trial court essentially instructed the jury on both duress and necessity. In other words, not only did Mr. Floyd receive the instruction his trial counsel requested, the instruction also subsumed the instruction for which he now argues on appeal.

{¶31} Along these same lines, Mr. Floyd's argument that his counsel was ineffective for requesting an instruction on duress rather than necessity is without merit. The instruction at issue was broad enough to encompass both duress and necessity, and the instruction corresponded to the core of Mr. Floyd's defense, namely, that he was forced to steal the vehicle because he was afraid someone was trying to kill him. To the extent Mr. Floyd was entitled to

an affirmative defense instruction, he was entitled to duress because the outside force in this case was human force. *See Flinders* at ¶ 30. *See also Lawson* at ¶ 20-21.

{¶32} Accordingly, I concur in the majority's judgment.


APPEARANCES:

JEFFREY N. JAMES, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN DIMARTINO, Assistant Prosecuting Attorney, for Appellee.