[Cite as *State v. White*, 2020-Ohio-1231.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CITY OF CINCINNATI, STATE OF OHIO, | : | APPEAL NO. C-190262 TRIAL NO. 16TRD-949-B/C |
| Plaintiff-Appellee, | : | |
| | : | *O P I N I O N.* |
| vs. | | |
| | : | |
| GREGORY WHITE, | | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed

Date of Judgment Entry on Appeal: March 31, 2020

*Paula Boggs Muething*, City Solicitor, *Natalia Harris*, City Prosecutor, and *Jon Vogt,* Assistant City Prosecutor, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, and *Sarah Nelson,* Assistant Public Defender*,* for Defendant-Appellant.

**ZAYAS, Judge.**

{¶1}  Defendant-appellant Gregory White was found guilty after a bench trial of operating a vehicle without reasonable control, a violation of R.C. 4511.202, and failing to stop after an accident on a public highway, a violation of R.C. 4549.02. White challenges his convictions as based upon insufficient evidence and contrary to the weight of the evidence.  For the following reasons, we reverse his convictions.

### Facts

{¶2}  In the early morning hours of January 1, 2016, White was driving his Chevrolet S-10 pickup truck north on I-75 towards the I-74 interchange in Cincinnati.  While on I-75, between Harrison Avenue and Hopple Street, White rear-ended a Ford Explorer.  After the accident, White pulled over to the side of the highway to speak to the driver of the Ford Explorer, Julian Vega.

{¶3}  As White stopped, Vega exited from his vehicle and began banging on the driver's side window of White's truck.  White testified that there was no way he could talk to Vega because Vega "was just banging on the window like he was trying to get into my car but I had my door locked."  White said Vega "was real angry" to the point that White felt his safety was in jeopardy and that he had to leave.  White drove off, but Vega pursued him.

{¶4}  Vega sped ahead of White, getting in front of White just as he was merging from I-75 onto I-74.  Vega slowed down and stopped in the middle of the highway, which required White to slow down and stop to avoid hitting him.  As White stopped, Vega again got out of his vehicle and began banging on the window of White's truck.  White testified that there was no sense in trying to talk to Vega because of how angry he was, "like he was going to do something."  White backed up

and again drove away, explaining that he was in shock "trying to get away from this guy."

{¶5} As the first confrontation between White and Vega was occurring, Christopher Reide drove onto I-75 near Seventh Street in his Subaru Legacy. Reide testified that he saw a Chevrolet S-10 and a Ford Explorer stopped in the far left lane of the highway. Shortly thereafter, both vehicles sped past him and moved into the center lane, the lane that Reide was in. Reide testified that it appeared that the Ford Explorer was trying to get the Chevrolet S-10 to stop by braking and blocking the truck's path. Reide explained that the vehicle immediately in front of him swerved out of the way to avoid the stopping vehicles. Reide, who was driving 60 m.p.h., came to a complete stop in the center lane of I-75, directly behind the Chevrolet S-10.

{¶6} Before Reide could maneuver around the two vehicles, he saw the driver of Ford get out of his vehicle and attempt to open the door of the Chevrolet. Reide said the Chevrolet then backed up and hit his car, and pulled away hitting his car again. Reide indicated that both impacts were minor. As the Chevrolet drove off, Reide called 911 and pursued the vehicle. The Ford also joined the pursuit. All three vehicles continued from I-75 onto I-74, exited the highway at Montana Avenue, and continued south on Montana Avenue towards Ferncroft Drive.

{¶7} White testified that when he entered the turn lane on Montana Avenue to turn onto Ferncroft Drive, Vega used his Ford to push White off the road. White's truck veered off the road and came to a stop in a resident's front yard. White said that he was trying to start his truck back up when Vega opened his passenger's side door and hit him with something. White said that he did not know what happened after that.

{¶8}    When Reide pulled up, he was still on the phone with 911 and told the dispatcher that the two drivers were fighting.   Reide saw that Vega had the passenger's side door open and was leaning over to the driver's side, swinging on White.

{¶9}    Cincinnati Police Officer Curtis Latham responded to the incident and testified that he observed two individuals fighting when he arrived on the scene. White was transported to the hospital.  Latham testified that there was damage to the front and the passenger's side of White's truck.   He also indicated that the Ford Explorer had damage to the rear bumper, front bumper, and driver's side.

### Procedural History

{¶10}  As a result of the accident with Reide, White was charged with operating a motor vehicle without being in control of it, in violation of R.C. 4511.02 (Count B), and failing to stop after an accident, in violation of R.C. 4549.02 (Count C).  White was also charged with driving while his license was suspended, in violation of R.C. 4510.11, but pled to the lesser charge of violating R.C. 4510.16 (Count A). Following a bench trial, White was found guilty of the B and C charges.  The trial court sentenced White to court costs on Count B, and 180 days in jail with 180 days suspended, one year of community control, a six-month driver's license suspension, and a $50 fine on Count C.

{¶11}  White appealed Counts B and C, and the trial court granted a stay of both sentences pending appeal.  This court dismissed White's appeal for lack of a final appealable order.  *State v. White*, 1st Dist. Hamilton Nos. C-160403 and C-160410 (June 14, 2017).  We held that because court costs are not considered criminal punishment and are therefore not part of a sentence, White was not actually

sentenced. White appealed to the Ohio Supreme Court, which affirmed the judgment of this court, holding that

> No magic words are required, and there is no requirement that a fine or other sanction be imposed before it may be waived. The trial court's decision not to impose a sentence must simply be clear in the entry. For example, in this case, it would have been sufficient for the trial court to state in the entry "no fine," "fine waived," "$0 fine," or similar language.

*State v. White*, 156 Ohio St.3d 536, 2019-Ohio-1215, 130 N.E.3d 247, ¶ 15. The court dismissed White's appeal for lack of a final, appealable order.

{¶12} White returned to the trial court, which then imposed "a zero dollar fine and costs." Accordingly, the language in the entry now being appealed is sufficient for a final and appealable order, and this court has jurisdiction to proceed.

{¶13} White now asserts two assignments of error for our review.

**Analysis**

{¶14} For ease of discussion, we address White's assignments of error out of order. In his second assignment of error, he argues that the trial court erred in finding him guilty of operating a vehicle without being in control of it and failing to stop after an accident because both convictions were against the manifest weight of the evidence. White asserts that the trial court misapplied the law for using duress as an affirmative defense and that he proved by a preponderance of the evidence that he was under duress during the events involving Reide.

{¶15} Though White alleges that his convictions were against the manifest weight of the evidence, he ultimately maintains that the trial court erred as a matter of law. We therefore recast his assignment of error to reflect his argument. We

review errors of law de novo. *See State v. Romeo*, 11th Dist. Portage No. 2007-P-0066, 2008-Ohio-1499. Under a de novo standard of review, we review the judgment independently and "without deference to the trial court's determination." *State v. Linnen*, 10th Dist. Franklin No. 04AP-1138, 2005-Ohio-6962, ¶ 9.

{¶16} At trial, White raised the affirmative defenses of duress and/or necessity to both charges. "The terms 'necessity' and 'duress' are distinct, yet are often used interchangeably and are often indistinguishable." *State v. Cross*, 58 Ohio St.2d 482, 483, 391 N.E.2d 319 (1979), fn.2. The theme of both terms is "that imminent, immediate danger or threat of danger prevents the actor from exercising his own will, and that there is no alternate path to take. Therefore, the actor is forced to choose between the lesser of two evils." *Id.* The difference between duress and necessity is that duress involves a human threat whereas necessity involves a threat from natural or physical forces. (Internal citation omitted.) *State v. Lawson*, 2d Dist. Montgomery No. 22155, 2008-Ohio-1311, ¶ 21.

{¶17} In order to establish the defense of duress, the defendant must establish five elements:

> (1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm.

*State v. Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882, ¶ 30.

{**¶18**} "The force used to compel the actor's conduct must remain constant, controlling the will of the unwilling actor during the entire time he commits the act, and must be of such a nature that the actor cannot safely withdraw." (Internal citations omitted.) *State v. Getsy*, 84 Ohio St.3d 180, 199, 702 N.E.2d 866 (1998). In other words, "the immediacy of the harm threatened is an essential element of the defense." *State v. Jordan*, 11th Dist. Trumbull No. 2009-T-0110, 2010-Ohio-5183, ¶ 25, *rev'd in part on separate grounds*, 128 Ohio St.3d 268, 2011-Ohio-737, 943 N.E.2d 565. "Fear of future harm cannot be the basis of such a defense." *State v. Good*, 110 Ohio App. 415, 419, 165 N.E.2d 28 (10th Dist.1960). The Ohio Supreme Court has held that the duress defense "is strictly and extremely limited in application and will probably be effective in very rare occasions. It is a defense and not a conjured afterthought." *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979).

{**¶19**} The defense of duress is judged by an objective standard—i.e., the defendant must have a subjective good faith belief of serious bodily injury but that belief must be reasonable. *See State v. Harkness*, 75 Ohio App.3d 7, 11, 598 N.E.2d 836 (6th Dist.1991) (upon escape from a police car "appellant subjectively believed, and there was objective evidence to support the belief, that were he to be placed in jail he might be subject to serious bodily injury or death as the result of his activities as a police informant"); *State v. Procter*, 51 Ohio App.2d 151, 158, 367 N.E.2d 908 (4th Dist.1977) (duress must be of such a nature that there is a "well-grounded apprehension of death or serious bodily injury").

{**¶20**} The defendant has the burden of proving the affirmative defense of duress by a preponderance of the evidence. *State v. Ireland*, 155 Ohio St.3d 287,

2018-Ohio-4494, 121 N.E.3d 285. "A preponderance of the evidence is defined as that measure of proof that convinces the judge or jury that the existence of the fact sought to be proved is more likely than its nonexistence." *State ex rel. Doner v. Zody*, 130 Ohio St.3d 446, 2011-Ohio-6117, 958 N.E.2d 1235, ¶ 54.

**{¶21}** In this case, the trial court indicated that as a matter of law White's duress defense did not apply to these circumstances. The court stated:

> In my opinion the duress necessity defense has a limit as to how far it can be extended and what ongoing conduct is quote unquote protected by the duress defense. Had the Defendant been charged with leaving the scene of the accident or any conduct related to that accident with the Ford Explorer, the duress defense in that situation may well have been appropriate.
>
> However, when continued violations of law continue to occur and the victims of those incidents have no relationship to that immediate threat, I can't find that the Defendant has met its (sic) burden of proof that its (sic) culpability for that subsequent conduct can be excused. Therefore, the Court is simply not willing to extend the duress defense beyond the initial accident involving the Explorer. And, therefore, I do not believe that the defense has an inculpability as it relates to the subsequent conduct including the accident of the failing to maintain reasonable control that led to the Reide accident and the failure to stop from that accident, stemming from that accident.

In rejecting White's affirmative defense, the court explained that it was following *State v. Cross*, 58 Ohio St.2d 482, 391 N.E.2d 319, which limits the application of

duress to very rare occasions.

**{¶22}** We find the trial court erred as a matter of law in limiting the application of duress here for three reasons. First, the affirmative defense of duress can apply to situations involving continued violations of the law. The only requirement is that the elements of the defense be met with respect to each charge. That is to say, as long as the duress is ongoing, the defendant's ability to use the duress as an affirmative defense is likewise ongoing. *See, e.g., State v. Long*, 1st Dist. Hamilton No. C-090248, 2010-Ohio-1062 (defendant was entitled to raise duress as defense to charges for aggravated robbery, carrying a concealed weapon, and improperly handling a firearm in a motor vehicle—charges that resulted from a sequence of events, or continued violations of the law). Accordingly, White was entitled to raise the defense of duress to his charges for the events involving Reide.

**{¶23}** Second, the victim of the defendant's conduct need not be the source of the threatened harm, as the trial court determined. The trial court erroneously concluded that because White involved Reide—who White was not fleeing from, as he was in fear of and fleeing from Vega—duress could not apply to the charges that arose with respect to Reide. Ohio law on duress does not contain such a limitation. Rather, duress is a defense to a *crime* irrespective of the identity of the victim. *See Getsy*, 84 Ohio St.3d at 197-198, 702 N.E.2d 866.

**{¶24}** Finally, while the trial court was unwilling to extend a duress analysis beyond the first confrontation with Vega and White, this incident was not at issue— White was not charged for the first accident involving Vega. White was only charged for the events involving Reide, and the court was obligated to consider duress as a defense under those facts. Therefore, the majority sustains White's second

assignment of error as recast and reverses the judgment of the trial court.

**White Proved Duress**

{¶25} Because the evidence is practically unrebutted that White was acting reasonably in his efforts to escape Vega, under the authority of App.R. 12(B), I would go further than the majority and discharge White from further prosecution. App.R. 12(B) authorizes this court to render a judgment in the appellant's favor if he is entitled to one as a matter of law—which I believe he is. This is not a case where the trial court, if this were remanded, would be required to make additional factual findings in order to render a decision. Moreover, this court has at least twice before reversed the trial court and discharged an appellant when the trial court erred in interpreting and applying an affirmative defense to a crime. *See State v. Miller*, 149 Ohio App.3d 782, 2002-Ohio-5812, 778 N.E.2d 1103 (1st Dist.) (reversing the judgment of the trial court and discharging appellant upon holding that the affirmative defense of self-defense was misapplied and that appellant proved the defense); *State v. Heath*, 1st Dist. Hamilton No. C-970555, 1998 WL 515967 (Aug. 21, 1998) (reversing the judgment of the trial court and discharging appellant upon finding that she proved the affirmative defense of defense of a family member). Accordingly, I see no reason to prolong a case that has been going on nearly four years since the date of conviction by remanding it back to the trial court, as the concurring opinion suggests, for a determination that we have the full authority to make.

{¶26} In this case, the state argued that White did not meet his burden in proving duress because he did not demonstrate that he was at risk of immediate, imminent death or serious bodily injury. The state emphasized that Vega did not

have a weapon and that White was safely inside his locked truck before and during the accident with Reide. The state also noted that White admitted he had a cell phone yet did not call the police for assistance, and contends that White could have safely withdrawn from the situation but did not. Looking at the record, however, I find that White demonstrated by a preponderance of the evidence that he was under duress.

{¶27} While Vega did not have a weapon and White was inside his locked truck, it was still reasonable for White to believe he was at risk of serious bodily injury. White was not required to have actual injuries. *See, e.g., United States v. Bailey*, 444 U.S. 394, 415, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980) ("An escapee who flees from a jail that is in the process of burning to the ground may well be entitled to an instruction on duress or necessity, 'for he is not to be hanged because he would not stay to be burnt.' "), citing *United States v. Kirby*, 74 U.S. 482, 487, 19 L.Ed. 278 (1868). White testified that after the fender-bender with Vega, when he pulled over and stopped, as is customary, he feared for his safety because Vega began angrily banging on his driver's side window. Recognizing this behavior as threatening, not to mention bizarre, White took the opportunity to escape the situation and drove away.

{¶28} Vega then pursued White, which was corroborated by Reide, and used his vehicle to block White and force him to stop in the middle of the highway at night. While this event did not result in serious bodily injuries, it very well could have. *See, e.g., State v. Allsup*, 3d Dist. Hardin No. 6-10-09, 2011-Ohio-404 ("an automobile is a thing that is capable of inflicting death" particularly when used against another vehicle with a victim positioned inside). Then, with Reide behind

White and Vega in front of him, White was prevented from safely withdrawing from the situation as he did the first time. *Compare State v. Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882 (defendant had the opportunity to escape the situation in his car by driving away, but did not take it and thus could not claim duress).

{¶29} White testified that Vega, again, immediately began banging on White's window and tried to open his truck, which was also corroborated by Reide. While it is argued that White could have called the police at this moment, contacting the police would not have removed him from the imminent danger posed by Vega. *See Wright v. State*, 402 So.2d 493, 497 (Fla.App.1981) ("An imminent danger is one which cannot be guarded against by calling for the protection of the law"), citing *Black's Law Dictionary* 676 (5th Ed.1979). Moreover, the threat posed by Vega was constant and unrelenting. *Compare State v. Floyd*, 9th Dist. Summit No. 25880, 2012-Ohio-3551 (defendant claimed he was under duress while fleeing from someone trying to kill him, but exited from two vehicles to proceed on foot, did not seek help from inside a nearby gas station, did not call the police even though he had a cell phone, and upon stealing a truck, did not drive directly to the police station). Under these facts, White's belief that he was facing imminent, serious bodily injury was well-grounded.

{¶30} Furthermore, although the events that followed this second confrontation with Vega are not necessarily relevant to our duress/serious-bodily-injury analysis, they do lend credibility to White's testimony to the risk he faced with Vega—he described Vega as looking "like he was going to do something." It turns out that this "something" included forcing White off the road by ramming his vehicle into White's truck, and beating White to such an extent that he required

hospitalization.

{¶31} Getting back to the elements of duress, while White hit Reide's Subaru twice when fleeing from Vega for the second time, Reide's testimony was that both impacts were minor and that he was not harmed. In other words, the harm White sought to avoid—a physical altercation with Vega—was greater than that sought to be prevented by the law defining the offenses charged—failing to exercise reasonable control of a vehicle by hitting Reide's vehicle and failing to stop after the accident.

{¶32} Lastly, there is nothing in the record to support a contention that White was at fault in bringing about the situation. The fact that he was driving on a suspended license is immaterial to the events that unfolded that night. Therefore, under virtually undisputed facts, I would find that White proved the affirmative defense of duress to the crimes for which he was charged and is entitled to judgment in his favor as a matter of law.

**Conclusion**

{¶33} White's second assignment of error as recast is sustained and the judgment of the trial court is reversed. The second assignment of error is dispositive of this appeal. His first assignment of error—challenging the sufficiency of the evidence supporting his conviction for operating a vehicle without being in control of it—is therefore moot, and we decline to address it.

Judgment reversed.

**BERGERON**, **J**., concurs.
**MOCK**, **P.J.**, concurs in part and dissents in part.

**BERGERON, J.,** concurring.

{¶34} I respectfully concur in the decision to reverse Mr. White's conviction but I cannot agree that we should discharge him. Before getting into why, I must

first express some bewilderment as to why the state prosecuted Mr. White for these offenses. If you asked a reasonable person on the street what they would do after a fender-bender in the middle of the night when the driver of the hit car became enraged and tried to assault them, I suspect most people would profess to do exactly what Mr. White did—drive away as quickly as possible. The state protests, asserting that Mr. White could have called 911 or he should have just sat there awaiting help because Mr. Vega possessed no apparent weapon. When someone is in the process of attacking your car at night, the fact that you don't immediately see a weapon doesn't mean that you should wait and see if your guess is wrong. Besides, it takes little effort with a well-placed elbow to shatter a widow and commence a physical assault. Subsequent developments here also validate Mr. White's fears—as soon as Mr. Vega caught up with him, he perpetrated an assault so vicious that it sent Mr. White to the hospital. Surely, we don't expect a reasonable person to sit there and endure such a pummeling? Mr. White's decision to flee strikes me as imminently reasonable, and while he did scrape another vehicle in his effort to abscond, that hardly seems to warrant a criminal prosecution.

{¶35} Nevertheless, the reward for his effort to avoid a confrontation was a prosecution that sparked a judicial odyssey. Indeed, this case has consumed a tremendous amount of judicial resources, including a trip to the Ohio Supreme Court and now a splintered decision before this court. I agree with the lead opinion that the trial court articulated an incorrect vision of duress, which necessitates reversal. On judicial economy grounds, I am tempted to agree with the lead opinion's inclination to discharge Mr. White as well.

{¶36} But I believe this implicates a broader question of the proper role of an appellate court. When confronted with a legal error committed by the trial court that

14

necessitates reversal, we typically will remand for further proceedings to enable the trial court to apply the standard we described to the facts at hand. *See State v. Kerrigan*, 168 Ohio App.3d 455, 2006-Ohio-4279, 860 N.E.2d 816, ¶ 60 (2d Dist.) (remanding after legal error in bench trial because the ultimate "determination is for the finder of fact, not for this court"). We generally will not remove fact-finding from the trial court unless the facts only admit one conclusion as a matter of law. These points particularly ring true when we are considering an affirmative defense in a criminal case because we cannot properly evaluate the weight of the evidence until the trial court fully considers the evidence under the correct legal standard: "It would be problematic for this court to undertake a review of the evidence under the correct standard *in the first instance*, in that it would usurp the role of the trial court." (Emphasis sic.) *State v. Meisel*, 7th Dist. Monroe No. 10 MO 4, 2011-Ohio-6426, ¶ 42 (remanding after trial court erred at bench trial in applying the incorrect standard to an affirmative defense); *State v. Houston*, 2018-Ohio-2788, 114 N.E.3d 1236, ¶ 38 (7th Dist.) ("[T]he case must be remanded for consideration of this affirmative defense on its merits."); *State v. McGraw*, 2d Dist. Montgomery No. 16202, 1997 WL 451359, *4 (Aug. 1, 1997) (remanding, when record was unclear as to court's disposition of affirmative defense, to "enter a judgment of acquittal if the court finds" the defendant proved his affirmative defense, or if not, to "enter a judgment of conviction").

{¶37} The dissent's perspective convinces me that, regardless of how clear I view the record on the question of duress, it is certainly not a matter free from debate. And, in my view, the trial court should resolve that debate in the first instance in its ultimate role as the fact-finder. I would accordingly remand for further proceedings before the trial court (unfortunately prolonging the journey of

15

this case). *See Meisel* at ¶ 45 ("[B]ecause the trial court applied the incorrect legal standard for self-defense, we reverse and remand this case for the trial court to apply the non-deadly force elements of self-defense to the facts adduced at trial."). Therefore, I respectfully concur only with the decision to reverse.

**MOCK, P.J.**, concurring in part and dissenting in part.

{¶34} While I agree that the trial court should have extended its duress analysis to the entire encounter, not just the first incident, I respectfully dissent from the lead opinion because White did not prove that he was under duress during the events involving Reide by a preponderance of the evidence.

{¶35} The Ohio Supreme Court has clearly stated that the affirmative defense of duress "is strictly and extremely limited in application and will probably be effective in very rare [cases]." *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979). This is not one of those cases; particularly in light of the fact that White never testified that he was in fear of "[i]mminent, immediate and impending death, or serious bodily injury," which is one of the essential elements of the defense of duress. *Id.* at 487.

{¶36} Further, the facts upon which White bases his defense of duress do not support a finding that White had a sense of immediate and impending death or serious bodily injury. Although Vega tried to enter White's car, he was unsuccessful because the car door was locked. Further, there was no evidence presented that Vega was brandishing a gun or other hand-held weapon at this time. Finally, and most importantly, White had a cell phone with him but chose not to call the police. Instead, White would have us believe that his only alternative to avoid a physical altercation with Vega was to hit Reide's car and take off from the scene. It was not.

16

White was sitting in his locked car and could have safely called the police at this time. *See State v. Floyd*, 9th Dist. Summit No. 25880, 2012-Ohio-3551, ¶ 13 (there was insufficient evidence to warrant an instruction for the affirmative defense of duress where defendant, among other things, could have used his cell phone to call the police but did not do so).

{¶37} Because White had another alternative available to him to avoid a physical altercation with Vega, I would hold that White has not proven he was under duress when he hit Reide's car and left the scene of the accident. Additionally, White had a motive, other than duress, for his criminal conduct—he was driving under a suspended license, a crime for which he was eventually charged.

{¶38} Given the foregoing, I would affirm White's convictions.

Please note:
        The court has recorded its own entry this date.