ROBB, P.J.
{¶ 1} Defendant-Appellant Jay H. Houston appeals the decision of the Noble County Court finding him guilty of failure to control in violation of R.C. 4511.202. Appellant contests the sufficiency and the weight of the evidence. He also contends the trial court erred in finding a deer running into the road is foreseeable and thus cannot constitute a sudden emergency for purposes of an affirmative defense. This court concludes a deer may constitute a sudden emergency; therefore, the trial court erred in ruling, as a matter of law, that a deer in the road cannot be a sudden emergency. As such, the judgment is reversed, and the case is remanded for further proceedings.
STATEMENT OF THE CASE
{¶ 2} Appellant was issued a citation for failure to control in violation of R.C. 4511.202. A bench trial was conducted by the Noble County Court on September 5, 2017. The trooper testified he was called to the scene of a single-vehicle accident on May 21, 2017 at 4:25 a.m. on Interstate 77 North in Noble County. He observed a large, yellow, Penske-rental, box truck leaning sideways in the grass median. (Tr. 4-5, 21). He concluded the truck drove off the left side of the freeway and into the grass median where it turned sideways, overturned, rolled, and landed upright with a twisted frame. (Tr. 4-5, 10-11, 21). The road was dry. The trooper observed minor cuts on the passenger and on Appellant, who identified himself as the driver. (Tr. 8-9).
*1240 {¶ 3} The trooper found no skid marks on the pavement where the truck left the roadway. (Tr. 6, 20). He saw tire tracks with tread marks in the grass at the point the truck left the berm, which demonstrated to him that the truck's tires were still freely rolling, as opposed to skidding, when the truck entered the grass. (Tr. 6). He concluded the driver did not brake while on the road or when first leaving it. (Tr. 12, 17). Photographs were admitted showing what the officer concluded were the truck's tire tracks in the grass after the truck started travelling sideways. (Tr. 7, 14, 17). A photograph showed the truck with a crushed cab roof, a broken windshield, and the metal sheared off the top and passenger side of the box compartment. Household belongings from inside the truck's box compartment were scattered in the median. The back end of the truck was protruding into the roadway on the other side of the freeway.
{¶ 4} The trooper testified he found no blood or fur on the front of the truck when checking to see if it made contact with an animal. (Tr. 8). When asked on cross-examination if he checked under the vehicle or the side of the vehicle for evidence of a deer, he said he did not because Appellant did not think he struck the deer. (Tr. 19). He acknowledged there are many deer-car collisions in this rural area and agreed a deer strike could cause death to someone inside a vehicle. (Tr. 18-19).
{¶ 5} Appellant testified in his own defense. He explained he rented the 26-foot box truck to move from North Carolina to northern Ohio. He planned to make multiple trips in a short period of time and left North Carolina at 8:00 p.m. (Tr. 26). Appellant testified he was driving north in the left lane when he saw a deer enter the road at a run from the right side of the roadway. (Tr. 27). He swerved off the road to the left, and the truck went into a slide. He said, "as soon as I hit the grass, that was it." (Tr. 28,31). He could not remember if he applied the brakes. (Tr. 28). He confirmed the truck rolled over and landed on its tires. (Tr. 27). He believed he was traveling at a speed between 60 and 70 miles per hour, stating the truck had a governor limiting the maximum speed to 70 mph, which he said was the speed limit. (Tr. 28, 30).
{¶ 6} When his attorney asked why he did not just go forward and hit the deer, he said his friend had a deer go through the car and maim him and "So I decided, that uh, natural instinct would be to swerve and miss instead of hitting him. That was just a natural instinct." (Tr. 28). When asked if he could have done anything differently, Appellant answered in the negative and explained, "something runs out in front of you, you're natural instinct is to swerve and to avoid it." (Tr. 30).
{¶ 7} Defense counsel renewed a motion for acquittal, which the court overruled, explaining reasonable minds could find Appellant guilty when the evidence was viewed in the light most favorable to the state. Closing arguments were presented. Defense counsel outlined the sudden emergency defense. The court then discussed the defense and concluded a wild animal crossing the road in a rural area of Ohio was foreseeable and therefore would not constitute a sudden emergency, finding the defense of sudden emergency does not exist for an animal in the roadway.
{¶ 8} The court found Appellant guilty as charged and imposed a fine of $50 plus $89 in court costs. (Tr. 35-36; J.E. 9/5/17). Appellant paid $139 that same day.[1] Appellant filed an untimely notice of *1241 appeal from the September 5, 2017 judgment entry on Friday, October 6, 2017, which was one day late. This court granted leave for a delayed appeal under App.R. 5(A). (J.E. 12/6/17).
ASSIGNMENT OF ERROR ONE: SUFFICIENCY
{¶ 9} Appellant sets forth three assignments of error, the first of which alleges:
"THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR ACQUITTAL UNDER CRIMINAL RULE 29 UPON THE COMPLETION OF APPELLANT'S CASE."
{¶ 10} Initially, the state responds by asserting a motion for acquittal has no application in a bench trial. Pursuant to Crim.R. 29(A) : "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses." Crim.R. 29(A). We note the holding: "The purpose of a motion for judgment of acquittal is to test the sufficiency of the evidence and, where the evidence is insufficient, to take the case from the jury. In the non-jury trial, however, the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence." City of Dayton v. Rogers , 60 Ohio St.2d 162, 163, 398 N.E.2d 781 (1979).[2]
{¶ 11} A defendant does not waive a sufficiency argument by failing to renew a motion for acquittal. Likewise, a defendant is not required to move for acquittal in order to raise sufficiency of the evidence on appeal. In re J.M. , 7th Dist. No. 12 JE 3, 2012-Ohio-5283, 2012 WL 5542870, ¶ 34 (a defendant does not waive a sufficiency argument by failing to file a motion for acquittal as a not guilty plea preserves sufficiency arguments for purposes of appeal), citing State v. Jones , 91 Ohio St.3d 335, 346, 744 N.E.2d 1163 (2001), citing State v. Carter , 64 Ohio St.3d 218, 594 N.E.2d 595 (1992). Still, the law does not prohibit a defendant from asking the court at the close of the state's case for an acquittal to be entered prior to the defense calling witnesses in a bench trial. A renewed motion at the close of all evidence is not required, and the renewed motion in a bench trial is akin to a closing argument to emphasize the defendant's position. The defendant can argue insufficiency of the evidence to a trial court at a bench trial regardless of the form the argument takes.
{¶ 12} In any event, the review of a denial of a Crim.R. 29 motion for acquittal *1242 involves the application of the standards for reviewing the sufficiency of the evidence. See, e.g. , Crim.R. 29(A) (referring to insufficient evidence); State v. Williams , 74 Ohio St.3d 569, 660 N.E.2d 724 (1996) ; State v. Carter , 72 Ohio St.3d 545, 553, 651 N.E.2d 965 (1995). Accordingly, when a defendant challenges a court's denial of a motion for acquittal, he is challenging the sufficiency of the evidence. Whether the evidence is legally sufficient to sustain a conviction is a question of law evaluating the adequacy of the evidence. State v. Thompkins , 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In evaluating the sufficiency of the evidence, the court views the evidence and all rational inferences in the light most favorable to the state. See State v. Filiaggi , 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) ; State v. Goff , 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). An evaluation of credibility is not involved in a sufficiency review. State v. Yarbrough , 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82. See also Thompkins , 78 Ohio St.3d at 390, 678 N.E.2d 541 (Cook, J., concurring) (sufficiency involves the state's burden of production rather than its burden of persuasion).
{¶ 13} As the state's brief points out, a conviction cannot be reversed on the grounds of insufficient evidence unless the reviewing court determines that no rational fact-finder could have found the essential elements of the offense proven beyond a reasonable doubt. Goff , 82 Ohio St.3d at 138, 694 N.E.2d 916. The question is merely whether any rational mind could find the elements were established by the direct and circumstantial evidence. See State v. Getsy , 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998). Circumstantial evidence inherently possesses the same probative value as direct evidence. State v. Treesh , 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001).
{¶ 14} The elements of the failure to control offense are contained in R.C. 4511.202(A), which provides: "No person shall operate a motor vehicle * * * on any street, highway, or property open to the public for vehicular traffic without being in reasonable control of the vehicle * * *." See also R.C. 4511.202(B) ("Whoever violates this section is guilty of operating a motor vehicle * * * without being in control of it, a minor misdemeanor"). The statute does not require the prosecution to establish the precise reason the driver lost reasonable control of the vehicle. State v. Tyler , 4th Dist. No. 02CA2644, 2002-Ohio-4509, 2002 WL 2005772, ¶ 13 (a violation of the statute could result from various factual scenarios, including driver inattention or error). Foreseeability of a loss of control is not an element of this offense for the state to prove. See State v. Mc Caw , 2d Dist. No. 16202, 1997 WL 451359 (Aug. 1, 1997). The statute merely requires the prosecution to show the driver failed to reasonably control the vehicle (on a street or property open to the public for vehicular traffic).
{¶ 15} Here, the officer testified to his observations and conclusions, and photographs were admitted showing the scene. The large truck had a twisted frame and was sitting sideways in the grass median with the back end protruding into one side of the freeway. The tire tracks showed it came from the other side of the freeway without braking as it left the road and then turned sideways. The trooper could ascertain the truck rolled after turning sideways. The top and side of the box truck were sheared away, exposing the contents which were strewn in the median. Viewing the evidence and reasonable inferences in the light most favorable to the state, a rational trier of fact could conclude Appellant was not in reasonable control of the vehicle immediately prior to the accident.
*1243 There was sufficient evidence to support a conviction of operating a motor vehicle without being in control of it in violation of R.C. 4511.202.
{¶ 16} Although Appellant's assignment of error discusses a motion for acquittal (and a motion for acquittal involves the sufficiency of the evidence presented against the defendant), Appellant frames the issue as being whether the court erred by failing to grant his motion for acquittal "where he successfully presented the defense of a sudden emergency to justify failing to control his vehicle." He then sets forth law on the sudden emergency defense and states he met his burden of proving the elements of this affirmative defense by a preponderance of the evidence. The due process concept involving the sufficiency of the state's evidence does not deal with the strength of the defense's evidence for an affirmative defense. State v. Hancock , 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35-38. Rather, the strength of the defendant's evidence as to his affirmative defense can be addressed under the principles relating to the weight of the evidence. See id. at ¶ 39-42. Additionally, the legal existence of an affirmative defense, discussed further infra, is a different question than a motion for acquittal or sufficiency of the state's evidence. Accordingly, the first assignment of error lacks merit.
ASSIGNMENT OF ERROR TWO: MANIFEST WEIGHT
{¶ 17} Appellant's second assignment of error contends:
"THE TRIAL COURT ERRED BY FINDING THE APPELLANT GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
{¶ 18} Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." Thompkins , 78 Ohio St.3d at 387, 678 N.E.2d 541. It depends on the effect of the evidence in inducing belief but is not a question of mathematics. Id. A weight of the evidence review involves the state's burden of persuasion, whereas a sufficiency review involves the state's burden of production. See id. at 390, 678 N.E.2d 541 (Cook, J., concurring). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Lang , 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing Thompkins , 78 Ohio St.3d at 387, 678 N.E.2d 541.
{¶ 19} This discretionary power of the appellate court is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v. Hunter , 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting State v. DeHass , 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. Seasons Coal Co. v. Cleveland , 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). We therefore generally proceed under the premise that when there are two fairly reasonable views of the evidence or two conflicting versions of *1244 events, neither of which is unbelievable, we do not choose which one we believe is more credible. State v. Gore , 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).
{¶ 20} The trooper's testimony was believable. He testified about a lack of skid marks on the pavement or in the grass where the truck first left the road. His conclusions as to the tire tracks, sideways motion, and overturning were persuasive. The trial court did not lose its way or create a manifest miscarriage of justice in finding Appellant failed to reasonably control the vehicle.
{¶ 21} In any event, the arguments under this assignment of error rely on arguments as to the Appellant's affirmative defense of sudden emergency. An affirmative defense is either: (a) a defense expressly designated as affirmative; or (b) a defense involving an excuse or justification peculiarly within the knowledge of the accused, which the accused can fairly be required to adduce supporting evidence. R.C. 2901.05(D)(1). "The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused." R.C. 2901.05(A).
{¶ 22} Appellant testified a deer ran into the road from the right and his instinct was to swerve off the left side of the freeway into the grass while going between 60 and 70 mph in a 26 foot long box truck. As the state responds, Appellant's credibility was a matter for the trial judge, who watched him testify. Appellant urges the statements on the record suggest the judge believed his testimony that a deer ran into the road. Nevertheless, the trial court's statements suggest the decision to convict Appellant was based on a legal conclusion. This leads to Appellant's next argument, which must be considered before the weight of the evidence as to the affirmative defense can be fully reviewed. But first, we review the trial court's statements on the defense.
{¶ 23} After counsel presented a closing argument concerning the sudden emergency defense, the court asked if the law on sudden emergency provides "it has to be something that is unforeseeable." (Tr. 33). The court then asked if "anybody that drives on the roads in a rural part of the State of Ohio is gonna find that it's unforeseeable that a wild animal could cross the road?" (Tr. 33-34). Defense counsel replied, "No. That, that is entirely foreseeable. However, - - -." At that point, the court opined, "So consequently, the defense of [a] sudden emergency is really not available, under those circumstances." The court noted it had never read a case saying a wild animal crossing a road is a sudden emergency and asked if defense counsel knew of a case on the subject. Counsel said he was unable "to find one where it was - - -" at which point the court suggested it considered the issue in the past. Some "inaudible" comments were made by defense counsel and the court. The court then concluded: "No. Living in the rural area we do. Uh, but consequently, I've never been able to find one either. And so, consequently, uh, I don't find that the defense exists." (Tr. 34).
{¶ 24} In the Second District's Mc Caw case, the defendant testified his failure to control the vehicle was the result of a blackout and said his doctor's office failed to warn him of this possibility. The trial court made a comment: "Is it your understanding or do you believe that because you blacked out and they failed to properly advise you that that excuses you from the accident?" On appeal, the defendant argued the trial court erred by indicating a blackout was not a legal excuse. The Second District held the defendant was entitled to offer evidence to prove his affirmative *1245 defense that his failure to control was due to fainting or a momentary loss of consciousness and any rejection of this theory as an affirmative defense would have constituted a legal error. The court pointed out: "If the trial court disbelieved McCaw's bare assertions it was not required to credit his defense, notwithstanding the fact that the State had offered no evidence contradicting McCaw's claims." Mc Caw , 2d Dist. No. 16202.
{¶ 25} However, the Second District was "unable to determine whether the trial court found that McCaw had failed to bear his burden of proof or whether it rejected the theory of his affirmative defense." Id. The court therefore concluded: "Because we cannot determine which of those alternatives the trial court followed, we must reverse McCaw's conviction and remand for further proceedings" with a special mandate instructing the trial court "to review the record herein and to either (1) enter a judgment of acquittal if the court finds that Defendant-Appellant McCaw proved his affirmative defense by a preponderance of the evidence or (2) enter a judgment of conviction if the court finds that McCaw failed to bear the burden of proof." Id.
{¶ 26} We now consider the propriety of the trial court's statements regarding whether Appellant was entitled to a decision on his sudden emergency defense.
ASSIGNMENT OF ERROR THREE: SUDDEN EMERGENCY
{¶ 27} Appellant's third assignment of error provides:
"THE TRIAL COURT ERRED IN FINDING THAT AN ANIMAL ENTERING THE ROADWAY WAS A REASONABLY FORESEEABLE EVENT THAT NEGATED THE SUDDEN EMERGENCY DEFENSE."
{¶ 28} The Ohio Supreme Court has addressed many civil cases involving drivers who were sued for negligence after the failure to comply with a specific safety statute and who presented the sudden emergency doctrine as a legal excuse. See Oechsle v. Hart , 12 Ohio St.2d 29, 31-34, 231 N.E.2d 306 (1967) (reviewing various cases). In addition to Oechsle , Appellant cites the Supreme Court's Bush case. In Bush , the Court held: "A legal excuse, precluding liability for injuries resulting from the failure to comply with the statutory requirements respecting the operation of a motor vehicle on the public highways, must be something that would make it impossible to comply with the statute, something over which the driver has no control, an emergency not of the driver's making causing failure to obey the statute, or an excuse or exception specifically provided in the statute itself." Bush v. Harvey Transfer Co. , 146 Ohio St. 657, 664-65, 67 N.E.2d 851 (1946) (and stating the defendant cannot excuse himself from statutory compliance by showing "he did or attempted to do what any reasonably prudent person would have done under the same or similar circumstances").
{¶ 29} In discussing the sudden emergency defense, the Oechsle Court reiterated: "An emergency which will relieve a motorist of his duty to comply with a safety statute regulating vehicular traffic must arise as the result of something over which he has no control." See Oechsle , 12 Ohio St.2d at 34, 231 N.E.2d 306. Therefore, "[a] self-created emergency, one arising from the driver's own conduct or from circumstances under his control, cannot serve as an excuse." Id. "[T]he operator of a motor vehicle is responsible for keeping his vehicle under control and on his side of the road. This is true irrespective of the condition of the road." Id.
*1246 {¶ 30} The Oechsle Court therefore ruled that skidding upon a wet or icy road is a circumstance within the power of the driver to prevent. Id. (bad road conditions alone will not excuse a driver from the statutes requiring him to stay on his half of the road), overruling Kohn v. B. F. Goodrich Co. , 139 Ohio St. 141, 38 N.E.2d 592 (1941) and distinguishing Francis v. Bieber , 10 Ohio St.2d 65, 69, 225 N.E.2d 251 (1967) (allowing the sudden emergency defense where cars were parked without lights on the side of a road just after a crest of a hill, someone stepped across the center line into the defendant's lane while waving a flashlight, and the defendant braked causing her car to skid on an icy road into one of the parked cars). "Where a motorist unexpectedly comes upon a patch of ice on a dry and otherwise clear roadway which causes him to lose control of his car which skids left across the center line of the highway striking plaintiff's car, the defense of sudden emergency is not available to such motorist and it is error for the trial court to charge the jury with respect thereto." Id. at paragraph three of syllabus.
{¶ 31} The parties agree a criminal defendant can present a sudden emergency defense as a legal excuse to a violation of a traffic safety statute. "[U]nder Ohio law, a driver may, under circumstances, avoid a violation of a traffic statute that regulates the operation of motor vehicles if the motorist can show that something over which she had no control, or an emergency not of her own making, made it impossible to comply with the statute's requirements." See, e.g. , State v. Davis , 4th Dist. No. 04CA1, 2004-Ohio-5680, 2004 WL 2390013, ¶ 15 (but finding the trial court could disbelieve the testimony that an oncoming vehicle forced the bus to swerve).
{¶ 32} The state cites a Twelfth District case where a defendant put on the affirmative defense of sudden emergency due to a deer. The court found: the only evidence was the trooper's testimony that the driver claimed there was a deer; the defendant put on no evidence; the trooper testified there was no evidence of braking or evasive action; and the trooper suggested the evidence showed the driver merely drove off the road. The court affirmed the conviction finding the state did not put on evidence that a deer actually jumped in front of appellant's vehicle. Rather, the trooper merely mentioned the driver's claim at the scene. The court ruled this evidence could be viewed as a bare, self-serving assertion which the trial court was not required to believe. State v. Cecil , 12th Dist. No. CA99-06-020, 2000 WL 127076 (Jan. 31, 2000).
{¶ 33} The state notes the trial court could have disbelieved Appellant about the presence of or emergency presented by the deer. As aforementioned, Appellant claims it was implied the court believed him about the deer. However, a finding that a deer cannot be a sudden emergency per se does not suggest the court believed or disbelieved Appellant's story. There is no indication the court issued an alternative ruling based on an evaluation of the weight of the facts and circumstances.
{¶ 34} Alternatively, the state relies on the Fifth District's language on unforeseeability in discussing the defense. For instance, the Fifth District has stated: "An operator of a motor vehicle is excused from complying with a safety statute if without fault on his part, and because of circumstances over which he had no control, he was confronted by a sudden unfor[e]seeable emergency which made compliance with the statute impossible." State v. Hitchings , 5th Dist. No. 95CA00379, 1996 WL 575992 (Sep. 23, 1996).
*1247 {¶ 35} As Appellant points out, the Ninth District proceeded under the principle that a deer in the road could constitute sudden emergency without any regard for the foreseeability of a deer. State v. Gabriel , 9th Dist. No. 14CA0005-M, 2014-Ohio-5387, 2014 WL 6865665. In that case, as in the Twelfth District's Cecil case, the court concluded the defendant failed to put on a persuasive defense as there was no evidence a deer was actually in the roadway besides the trooper's mention of the defendant's excuse. Id. at ¶¶ 3, 18. See also Cecil , 12th Dist. No. CA99-06-020.
{¶ 36} This court concludes a deer entering a roadway can be a sudden emergency. It was error for the trial court to conclude as a matter of law that an animal entering the roadway can never be a sudden emergency. The mere fact that it is foreseeable a deer may cross a freeway at some point in time in rural Ohio does not mean a deer running across the road at a certain time or place is foreseeable and can never be a sudden emergency. (By comparison, the deer at that place and time may be no more foreseeable than a vehicle exiting a driveway into a defendant's path.) In other words, the bare fact a deer runs into a driver's path is not a "self-created emergency" and may qualify as a situation "over which [the driver] has no control." See Oechsle , 12 Ohio St.2d at 34, 231 N.E.2d 306.
{¶ 37} A defendant may fail to prove his defense if, for instance, part of the situation involving a deer arises from the driver's own conduct or from circumstances under his control, such as where there is evidence of speeding, driving too fast for the conditions, driving while being distracted (such as using a device or eating food), driving in the dark without headlights, and driving without prescribed eyeglasses. Whether there actually was a deer, whether the deer posed an actual emergency in a given case, and whether the driver had no control over the situation are factual questions before the trier of fact.
{¶ 38} Because the trial court held a deer running into the freeway can never be a sudden emergency in rural Ohio, the case must be remanded for consideration of this affirmative defense on its merits. This assignment of error is sustained in part. We cannot review the weight of the evidence on Appellant's affirmative defense since the trial court did not engage in an evaluation of whether Appellant proved his defense by a preponderance of the evidence.
{¶ 39} For the foregoing reasons, the judgment of conviction is reversed, and the case is remanded to the trial court with instructions to consider Appellant's sudden emergency defense.
Donofrio, J., concurs.
Waite, J., concurs.

We note there is precedent for dismissing a misdemeanor appeal as moot where the defendant pays the fine and court costs without seeking a stay and where he does not offer evidence from which the appellate court can infer a collateral legal disability. State v. Wilson , 41 Ohio St.2d 236, 325 N.E.2d 236 (1975). See also Akron v. Belford , 9th Dist. No. 22906, 2006-Ohio-1033, 2006 WL 551549, (dismissing appeal in a minor misdemeanor failure to control case, even though defendant issues with his conviction raised on appeal, including the affirmative defense of sudden emergency or blackout). However, this court only considers the issue moot if, for example, the defendant raises solely an issue with his sentence on appeal and the sentence has already been served. See State v. Collins , 7th Dist. No. 12 MA 157, 2013-Ohio-5642, 2013 WL 6797396, ¶ 14-17 (noting the appeal would not be moot if he raised an issue with the conviction). One collateral legal disability from a traffic offense such as this is points on a driver's license, and Appellant raises an issue with his conviction.

Overruled on other grounds by State v. Lazzaro , 76 Ohio St.3d 261, 266, 667 N.E.2d 384 (1996).