# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
NOBLE COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JAY H. HOUSTON,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 18 NO 0464**

---

Criminal Appeal from the
County Court of Noble County, Ohio
Case No. 17 TRD 407

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Kelly A. Riddle*, Noble County Prosecutor and *Atty. Jamie A. Riley Pointer*, Assistant Prosecuting Attorney, 150 Courthouse, Caldwell, Ohio 43724, for Plaintiff-Appellee

*Atty. Michael J. Kinlin*, and *Atty. Stephen Hanudel*, 124 Middle Avenue, Suite 900, Elyria, Ohio 44035, for Defendant-Appellant.

Dated: September 30, 2019

_____

**WAITE, P.J.**

{¶1} Appellant Jay H. Houston appeals the judgment of the Noble County Court. Following our earlier remand, Appellant was found guilty of failure to control his motor vehicle in violation of R.C. 4511.202. Appellant contests the weight of the evidence used to convict him. Based on the following, the trial court did not lose its way or create a manifest miscarriage of justice in finding that Appellant failed to reasonably control his vehicle. Appellant's assignment of error is without merit and the judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

{¶2} On May 21, 2017, at 4:25 a.m., Trooper William Howard ("Trooper Howard") of the Ohio State Highway Patrol was called to the scene of a single-vehicle accident on Interstate 77 North in Noble County. A badly damaged box truck was resting on the median. At the scene, Appellant informed Trooper Howard that he was the driver of the vehicle and that he had swerved off the road to avoid hitting a deer. Trooper Howard investigated the scene, and issued Appellant a citation for failure to control, in violation of R.C. 4511.202.

{¶3} A bench trial was held at Noble County Court on September 5, 2017. Trooper Howard appeared on behalf of the state. He testified that on his arrival at the scene he observed a large, yellow Penske rental truck leaning to its side on the grass median. (9/5/17 Tr., p. 4.) He concluded the truck had driven off of the left side of the road and into the grass median where it overturned, rolled and landed upright, leaving the truck with extensive damage to its frame. (9/5/17 Tr., pp. 4-5.) Trooper Howard noted

that the road condition was dry. He observed cuts on both Appellant and his brother, who was a passenger in the truck. (9/5/17 Tr., pp. 8-9.) According to Trooper Howard's testimony, there were no skid marks on the roadway but there were tire tread marks in the grass where the vehicle left the pavement. He testified that these both indicate that the tires were free rolling and no brake had been applied. (9/5/17 Tr., pp. 6, 12, 17.) A photograph was admitted into evidence showing the tire tracks in the grass median. Another photograph was admitted showing the damage to the truck. This included a crushed cab roof, broken windshield, and metal sheared off the top and passenger side of the truck's box compartment. Household items from the truck's box compartment were observed strewn across the median. Trooper Howard testified that he did not detect any fur or blood on the vehicle when checking to see if Appellant had hit an animal. (9/5/17 Tr., p. 8.) On cross-examination, Trooper Howard acknowledged that Appellant had conveyed that he did not think he actually struck the deer. (9/5/17 Tr., p. 19.) He also testified that collisions with deer were common on that roadway and could cause death to motorists. (9/5/17 Tr., pp. 18-19.)

{¶4} Appellant testified in his own defense. He had rented the box truck in North Carolina to move from North Carolina to Ohio and was planning to make several trips. He testified that he and his brother left North Carolina at 8:00 p.m. and he was driving north when he saw a deer enter the road from the right side of the roadway. (9/5/17 Tr., p. 27.) He testified that he swerved off the road to the left, but could not remember if he applied the brakes. (9/5/17 Tr., p. 28.) He testified that the truck rolled over and landed on its tires. (9/5/17 Tr., p. 27.) Appellant testified that he believed he was traveling

approximately 60 to 70 miles per hour and that the truck had a governor which limited driving over 70 miles per hour. (9/5/17 Tr., pp. 28, 30.)

{¶5} At the conclusion of the evidence, defense counsel renewed his earlier motion for acquittal. The trial court overruled the motion, concluding that when the evidence was viewed in a light most favorable to the state, reasonable minds could find Appellant guilty. During closing arguments, defense counsel raised the sudden emergency defense. The trial court discussed the requirements in applying this defense and concluded that a wild animal entering in the roadway in rural Ohio was foreseeable, and did not constitute a sudden emergency as a matter of law.

{¶6} In a judgment entry dated September 5, 2017, the trial court found Appellant guilty and imposed a fine of $50 plus court costs. Appellant paid the fine and fees, but filed an appeal on October 6, 2017. While the appeal was considered untimely, as it was one day late, we granted Appellant leave to file a delayed appeal.

{¶7} On appeal, Appellant challenged the sufficiency and weight of the evidence. He also contended that the trial court erred when it determined that an animal entering the roadway is foreseeable, and hence, in concluding that the affirmative defense of sudden emergency was not available to Appellant. In Appellant's initial appeal, we held that "a deer may constitute a sudden emergency; therefore, the trial court erred in ruling, as a matter of law, that a deer in the road cannot be a sudden emergency." *State v. Houston,* 7th Dist. Noble No. 17 NO 0455, 2018-Ohio-2788, 114 N.E.3d 1236, ¶ 1. The matter was remanded "with instructions to consider Appellant's sudden emergency defense." *Id.* at ¶ 39.

{¶8} On remand, the trial court held another bench trial on September 25, 2018. Trooper Howard once again testified for the state. His testimony was virtually identical to his testimony in Appellant's first trial. He described the condition of the vehicle, the dry road conditions, and that Appellant acknowledged he was the driver of the vehicle. (9/25/18 Tr., pp. 3-5.) He reiterated that Appellant told him that Appellant had swerved to avoid hitting a deer but that Appellant did not think he actually struck the deer. (9/25/18 Tr., p. 5.) Trooper Howard said he inspected the truck for signs of blood or animal fur, which were not present. The state introduced the same photographs into evidence of the roadway and the grass median. Trooper Howard testified that the lack of tire marks on the road's surface, but tread marks in the grass, indicated that Appellant most likely did not apply his brakes as the vehicle left the roadway. (9/25/18 Tr., pp. 5-8.) His investigation revealed that the vehicle had skidded sideways off of the road, rolled over, and landed on its tires. The box compartment of the vehicle was partially sheared off on the passenger side and household contents were scattered on the median. (9/25/18 Tr., pp. 8-9.) On cross-examination Trooper Howard again acknowledged that Appellant told him that he did not think he actually hit the deer, but that he swerved to miss it. (9/25/18 Tr., p. 12.) Defense counsel asked Trooper Howard if he looked for hoof prints near the crash site to corroborate Appellant's claim. Trooper Howard replied in the negative, explaining that because there were always deer in the area, there would most likely always be some hoof prints present. (9/25/18 Tr., p. 28.)

{¶9} At the close of the state's evidence defense counsel made a Crim.R. 29 motion, asserting that the state failed to present sufficient evidence to convict Appellant for failure to control in violation of R.C. 4511.202. The trial court overruled the motion,

concluding that the state presented evidence Appellant was driving a vehicle that drove onto the median and rolled, and "unless [defense counsel was] trying to insinuate that [Appellant] did it on purpose, would seem he's doing this without reasonable control. And therefore, there's going to be plenty of evidence to support the case, State's position at this time." (9/25/18 Tr., pp. 31-32.)

{¶10} Appellant again testified as a witness and gave testimony virtually identical to his testimony in the first trial. Appellant testified that he had rented the truck because he was moving from North Carolina to Ohio. In the process of relocating to Ohio, he traveled this same route many times, stopping at the same locations during each trip. (9/25/18 Tr., p. 35.) Appellant was accompanied by his brother during this trip. They left North Carolina at approximately 8:00 p.m. Appellant testified that he typically made three stops on route to their destination, but they elected not to stop at one of Appellant's typical stops in Caldwell, Ohio. Shortly after that decision was made, Appellant's brother noticed there was something in the road and Appellant swerved the vehicle, causing the accident. (9/25/18 Tr., p. 35.) Appellant testified that the vehicle rolled over and landed on its tires and that he was traveling approximately 70 miles per hour. He also testified that the truck had a governor on it preventing it from accelerating past 70 miles per hour. (9/25/18 Tr., p. 36.) Appellant testified that they got out of the vehicle and within a few minutes a sheriff's deputy stopped and summoned an ambulance. (9/25/18 Tr., p. 37.) Approximately one-half hour later Trooper Howard arrived to investigate the scene. (9/25/18 Tr., p. 37.) Appellant testified that he did not fall asleep and that he was not texting or otherwise distracted while driving. (9/25/18 Tr., p. 39.) Appellant presented testimony on the issue of sudden emergency. He testified that it was a matter of two to

three seconds between the time he saw the deer and when he swerved off the road to avoid colliding with it. (9/25/18 Tr., p. 43.) He had both hands on the wheel when the vehicle slid off the road and rolled over. It took Appellant twenty seconds for the vehicle to reach a complete stop. (9/25/18 Tr., p. 44.) He testified that he could not have stopped the vehicle instead of swerving because of his rate of speed and because the deer ran "directly in front of me." (9/25/18 Tr., p. 44.)

{¶11} Defense counsel made another Crim.R. 29 motion. The trial court again stated that the evidence was sufficient to meet the elements of failure to control. The court acknowledged that Appellant had presented evidence on the affirmative defense of sudden emergency, but stated that "there is sufficient evidence that reasonable minds could find that this uh, uh, statute's been violated" and overruled the motion. (9/25/18 Tr., p. 45.)

{¶12} Both sides made closing arguments. The state contended that the evidence did not support Appellant's version of events. Evidence showed Appellant never applied his brakes to avoid hitting anything. Because he was driving in the left lane and testified the deer entered from the right, even if an animal entered the roadway it would not amount to a sudden emergency, because Appellant had time to react. In any event, the state asserted that Appellant should have maintained control of the vehicle by applying the brakes to avoid entering the median and rolling the vehicle, since the roadway was completely dry.

{¶13} Defense counsel argued that Appellant was truthful in his recounting of the events and swerved out of the path of the deer for his own safety. Defense counsel asserted that Trooper Howard's investigation fell short because he did not look for fresh

hoof prints near the scene, the absence of which would have contradicted Appellant's version of events. Counsel claimed that Appellant was unable to maintain control of the vehicle because of his need to react to the deer for his own safety. Lastly, counsel argued that Appellant acted as a reasonably prudent person would have under the circumstances because, although it is foreseeable that a deer could run into the road, "the exact time and place is completely unforeseeable." (9/25/18 Tr., p. 47.) Hence, counsel maintained that Appellant should be acquitted based on sudden emergency.

{¶14} Ultimately, the court held:

[T]he Court, having listened to all the evidence, has paid particular attention to the manner in which uh, the parties have testified. Uh, in particular, their mannerisms, their frankness, lack of it. Uh, their egris, bias and infinity to go with the facts and circumstances surrounding the uh, well, surrounding the accident. And right off the bat, I will say that what the Trooper did, or did not look for, as far as deer tracks goes, is certainly not being held against him. And asking him to do so, when it's been already testified to that this was in the dark, seems a little bit off page of where should be. Uh, that, so that doesn't track as far as the Court's concerned. What the Court finds did happen is that on or about May 21st of 2017 (May twenty-first of twenty seventeen) and in Noble County, at approximately four, twenty-five (4:25) in the morning, that being dark, the defendant was operating a box truck owned by Penske Northbound on Interstate 77 (seventy-seven). At which time uh, he left the roadway, there being no signs of skid, hitting anything, or anything of that nature on road (INAUDIBLE) … entered the median. Uh,

thereafter, the tires went from rolling to sideways skidding. And the box truck overturned. * * * Now, the statute in particular uh, 4511.202 states, in an essence, that nobody shall operate a motor vehicle uh, on any street or highway without being in reasonable control of the vehicle. Now, that is apparent what happened. The defendant went up 77 (seventy-seven), went off the roadway into the median, lost controlled [sic] and crashed. But, he is setting forth a defense of sudden emergency. The sudden emergency has to be proven by the defendant by a preponderance of the evidence. He contends that a deer ran out in front of him, causing him to swerve and lose control of the vehicle. The Court finds that that testimony is not credible and is nothing more than self-serving. He had a half (1/2) an hour to come up with a justification as to why he ran off the road. And it looks like he didn't hit the deer. Uh, apparently it came across a whole lane of the interstate into his path, at which he still managed to miss the deer. And I, quite frankly, don't believe there was a deer present, period. I think it was just a justification as to why he lost control of the vehicle. And, as such, I am going to find, beyond a reasonable doubt, that you violated Section 4511.202 of the Ohio Revised Code.

(9/25/18 Tr., pp. 48-49.)

{¶15} In a thorough judgment entry, dated September 26, 2018, the trial court set forth findings of fact based on the testimony and evidence presented at trial. The trial court concluded:

Case No. 18 NO 0464

The Court had the opportunity to listen to the defendant's testimony, observe the manner in which the defendant testified, frankness of the defendant, or in this case the lack of it, together with the bias of the defendant, together with all the other facts and circumstances surrounding the testimony, hereby finds that the defendant's testimony was not credible. The Court does not believe that there was a deer involved in this accident and that the defendant's claim of a deer causing the wreck was no more than a self-serving statement as [sic] to justify the cause for the crash.

For the foregoing reasons the Court found the defendant Guilty, beyond a reasonable doubt, of violating §4511.202 of the Ohio Revised Code, Operating a vehicle without reasonable control.

(9/26/18 J.E.)

**{¶16}** Appellant was found guilty and the court again imposed a fine of $50 and $89 in court costs.

**{¶17}** Appellant filed this timely appeal.

ASSIGNMENT OF ERROR

THE TRIAL COURT ERRED BY FINDING THE APPELLANT GUILTY AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶18}** Weight of the evidence focuses on "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *State v. Thompkins,* 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997).

A review of the manifest weight of the evidence focuses on the state's burden of persuasion. *State v. Merritt,* 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 484 N.E.2d 717 (1st Dist.1983).

{¶19} A reversal should be granted only "in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Andric*, 7th Dist. Columbiana No. 06 CO 28, 2007-Ohio-6701, ¶ 19, citing *Martin* at 175. Determinations regarding witness credibility, conflicting testimony and evidence weight "are primarily for the trier of the facts." *State v. Hunter,* 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 995, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh all evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). When presented with two fairly reasonable perspectives regarding the evidence or with two conflicting versions of events, neither of which can be ruled out as unbelievable, we will not choose which one is more credible. *State v. Gore,* 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

{¶20} Trooper Howard's testimony in Appellant's second trial was virtually identical to that of the first. In Appellant's original appeal we concluded:

Case No. 18 NO 0464

The trooper's testimony was believable. He testified about a lack of skid marks on the pavement or in the grass where the truck first left the road. His conclusions as to the tire tracks, sideways motion, and overturning were persuasive. The trial court did not lose its way or create a manifest miscarriage of justice in finding Appellant failed to reasonably control the vehicle.

*Houston,* 2018-Ohio-2788 at ¶ 20.

**{¶21}** The only minor addition to Trooper Howard's testimony at Appellant's second trial related to hoof prints. On cross-examination, defense counsel asked Trooper Howard if he investigated the accident scene for hoof prints near the side of the road to corroborate or call into question Appellant's claim that a deer caused the accident. Trooper Howard testified that he did not look for fresh hoof prints. He testified that portion of Interstate 77 was known for heavy deer traffic and the presence of hoof prints near the road would not be exculpatory in his opinion. The defense's theory was that the presence of fresh hoof prints would at least indicate that a deer may have been present and would tend to support a sudden emergency defense. The trial court did not find the trooper's failure to look for deer tracks determinative, especially since it was dark at the time of the accident. (9/25/18 Tr., p. 48.)

**{¶22}** A party asserting an affirmative defense must establish either that (1) the defense has been expressly designated as affirmative; or (2) the defense relates to an excuse or justification peculiarly within the knowledge of the accused and in which the accused can fairly be required to adduce supporting evidence. R.C. 2901.05(D)(1). The

accused has the burden of going forward with an affirmative defense and has the burden of proof by a preponderance of the evidence. R.C. 2901.05(A).

**{¶23}** The defense of sudden emergency is defined as: "An emergency which will relieve a motorist of his duty to comply with a safety statute regulating vehicular traffic must arise as the result of something over which he has no control." *Oechsle v. Hart,* 12 Ohio St.2d 29, 34, 231 N.E.2d 306 (1967). An emergency resulting from one's own conduct or from circumstances under the motorist's control are not exculpatory under the sudden emergency defense. *Id.*

**{¶24}** In Appellant's first trial the court determined, as a matter of law, that a deer running into the road in rural Ohio did not qualify as an affirmative defense. On appeal, we concluded only that the court's decision that a deer running into the road can never be viewed as a sudden emergency was erroneous, and remanded so that the trial court could consider the evidence and determine whether, under the facts of this case, Appellant could support his affirmative defense.

**{¶25}** Appellant presented testimony at his second trial directed to the affirmative defense of sudden emergency. As noted above, Appellant testified that it was a matter of two to three seconds from the time he saw a deer and when he swerved off the road to avoid colliding with it. (9/25/18 Tr., p. 43.) He testified he could not have stopped instead of swerving because of his speed and because the deer ran in front of the vehicle. (9/25/18 Tr., p. 44.) Appellant also testified that he was not in any way distracted while driving.

**{¶26}** The trial court concluded after hearing all of the testimony that Appellant's version of events was not credible. The evidence presented by the state that Appellant

did not at any time during the incident apply his brakes weighed heavily in making this decision. The trial court concluded from Appellant's demeanor that Appellant's claim that a deer entered the roadway and caused the accident was pretextual.

**{¶27}** Appellant argues that, on remand, his guilt was a foregone conclusion. He appears to argue that because we overruled the trial court initially and remanded the matter, "[t]he trial court, with the same judge presiding, was going to find [Appellant] guilty no matter what evidence was presented by the defense." (Appellant's Brf., p. 9.) However, Appellant can cite to nothing in the record in support of his assertion that the trial court acted in a biased or improper fashion.

**{¶28}** Appellant had the burden of proof to show by a preponderance of the evidence that a deer entering the roadway became a sudden emergency which unavoidably caused this accident, and that the accident was not caused by his own failure to control his vehicle. The trial court did not find Appellant's testimony as credible as that of Trooper Howard. The trial court, as trier of fact in this bench trial, was in the best position to weigh the evidence presented and make determinations as to the credibility of the witnesses. *Seasons Coal*, at 80. The trial court was presented with two reasonable, otherwise believable versions of the incident and made a determination as to which was more credible. *Gore,* at 201. We will not disturb that determination absent extraordinary circumstances, none of which exist in the record in this matter.

**{¶29}** We conclude the trial court, as trier of fact, did not lose its way and did not create a manifest miscarriage of justice in determining that Appellant failed to control the vehicle through his own conduct and not due to a sudden emergency.

**{¶30}** For the above reasons, Appellant's assignment of error is without merit and is overruled. The judgment of the trial court is affirmed.

Donofrio, J., concurs.

Robb, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the County Court of Noble County, Ohio, is affirmed. Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**